UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

FRANMY LUNA,

Defendant.

**ORDER**

19 Cr. 818 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Luna is charged with conspiracy to distribute and possess with intent to distribute 280 grams and more of cocaine base, as well as an unspecified amount of powder cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), & (b)(1)(C). (Indictment (Dkt. No. 2) Count One)

Luna was arrested, presented, and arraigned before Magistrate Judge Katherine H. Parker on January 16, 2020. (See Dkt. No. 16) He was detained on consent without prejudice. (Id.) Luna now seeks release on bail.[1] (Apr. 2, 2020 Def. Ltr. (Dkt. No. 31)) The Government opposes his request. (Apr. 10, 2020 Govt. Ltr. (Dkt. No. 36)) No trial date has been set, and the defense is currently reviewing discovery and contemplating pretrial motions.

I. **LEGAL STANDARDS**

The Bail Reform Act, 18 U.S.C. § 3142(g) directs that the Court consider the following factors in determining whether pretrial release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the [defendant];

---

[1] Luna's counsel has consented to having his bail application decided on the papers; Luna has thus waived his right to a hearing. See Dkt. No. 41.

(3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release . . . .

18 U.S.C. § 3142(g).

In order for a defendant to be detained pending trial, the Government must demonstrate (1) by a preponderance of the evidence, that there is no condition or combination of conditions that will ensure the defendant's return to court; or (2) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community.

## II. THE PARTIES' ARGUMENTS

### A. Defendant Luna

Luna argues that he should be granted pretrial release because (1) of his mental and physical condition; (2) a lack of access to his attorney; (3) he does not present a risk of flight or a danger to the community; and (4) risks associated with the COVID-19 pandemic. (Apr. 2, 2020 Def. Ltr. (Dkt. No. 31); Apr. 7, 2010 Def. Ltr. (Dkt. No. 34))

According to Luna, he has "serious mental health issues that could be affected by the temporary lockdown at the MCC." (Apr. 2, 2020 Def. Ltr. (Dkt. No. 31) at 2) Luna further argues that "[i]n addition to unhygienic living conditions, frequent movement between units at the MCC over the past several weeks promises to aid the spread of the virus." (Id. at 5) In an April 10, 2020 letter, Luna contends that BOP's "protocol does not sufficiently address pre-

symptomatic spread" of the virus and that "only five of the more than 700 MCC inmates have been tested." (Apr. 10, 2020 Def. Ltr. (Dkt. No. 38) at 4-5)

Luna also complains that he "has borne a complete disruption of his right to counsel for the past three weeks." (Apr. 2, 2020 Def. Ltr. (Dkt. No. 31) at 7) According to Luna's counsel, the MCC did not respond to a March 25, 2020 request to arrange a call until April 8, 2020, and her communication with him "is complicated by his inability to speak or understand English." (Apr. 10, 2020 Def. Ltr. (Dkt. No. 38) at 5)

Finally, Luna argues that he "does not present a flight risk or danger to the community," because he "has no prior criminal record" and "has numerous family ties to New York, including his girlfriend, Richeli Hiraldo and their infant son." (Apr. 2, 2020 Def. Ltr. (Dkt. No. 31) at 1)

As to a bail package, Luna proposes (1) release to the Yonkers, New York apartment of his cousin, Victor Cabrera, and Cabrera's wife, with Mr. Cabrera acting as Luna's "third-party custodian until Pretrial Services is able [to] install an electronic bracelet"; (2) "electronic monitoring"; and (3) a personal recognizance bond of an unspecified amount signed by Ms. Hiraldo and Mr. Cabrera. (Id.) No information is provided as to the ability of Hiraldo and Cabrera to pay on a bond in the event that Luna were not to return to court.

### B. The Government

The Government opposes Luna's application, arguing that (1) he poses a danger to the community and a substantial risk of flight; and (2) he "suffers from no medical conditions that make him particularly susceptible to COVID-19." (Apr. 10, 2020 Govt. Ltr. (Dkt. No. 36) at 3-4)

According to the Government, Luna is "a street level drug dealer selling crack cocaine to end users in the vicinity of Thayer Street in northern Manhattan." (Id. at 3) The Government proffers that in a video and audio-recorded post-arrest interview, "Luna estimated that he sold more than 1,000 bags of crack cocaine for [co-Defendant Alexander] Melo in October and November 2019." (Id.)

The Government also notes that on November 20, 2019 – the day Luna's three co-Defendants were arrested – Luna "was a fugitive from a serious crime in Manhattan (snatching a phone from a bodega and subsequently wielding a machete)." (Id. at 1) Luna remained a fugitive until his arrest on January 16, 2020. (Id.) The Government argues that "Luna could easily continue his drug dealing activity while on bail, and the Court should have no confidence – given his past fugitive status and likely mandatory deportation – that the defendant will come back to [c]ourt." (Id. at 4)

As to the risk posed by the COVID-19 pandemic, the Government states that "Luna admits that he suffers from no medical conditions that make him particularly susceptible to COVID-19," and that his "purported basis to 'thin out the jail population' does not come close to demonstrating a 'compelling reason' for his release." (Id.)

As to Luna's arguments about access to counsel, the Government states that "BOP is making every effort to facilitate phone calls between inmates and their counsel, and email remains available to inmates at MCC." The Government further notes that pretrial release would not "facilitate in-person meetings with counsel given the current restrictions on all New Yorkers regarding travel and social distancing." (Id.)

### III. BAIL REFORM ACT ANALYSIS

#### A. Nature of the Offense Charged

Defendant Luna is charged with conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine, and an unspecified amount of powder cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), & (b)(1)(C). (Indictment (Dkt. No. 2))

The Government describes Luna as "a street level drug dealer selling crack cocaine to end users in the vicinity of Thayer Street in northern Manhattan." (Apr. 10, 2020 Govt. Ltr. (Dkt. No. 36) at 3) The Government further proffers that, in his post-arrest statements, "Luna estimated that he sold more than 1,000 bags of crack cocaine for [co-Defendant Alexander] Melo in October and November 2019. (Id.)

Luna is charged with the distribution of large quantities of crack cocaine. He faces a mandatory minimum sentence of ten years' imprisonment. Because of the drug conspiracy charge pending against Luna, there is a presumption under 18 U.S.C. § 3142(e)(3)[2] that no condition or combination of conditions will ensure Luna's return to court and the safety of the community.

#### B. Weight of the Evidence

As to the weight of the evidence against Luna, it appears overwhelming. The Government represents that after his "arrest in this case on January 16, 2020, the defendant waived his Miranda rights and gave a full confession in a video and audio recorded interview."

---

[2] 18 U.S.C. § 3142(e)(3): "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed –
(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ;
(B) an offense under section 924(c) . . . of this title. . . ."

(Id. at 1) In that statement, Luna "admitted to selling more than 1,000 bags of crack cocaine in October and November 2019 for his co-defendant Alexander Melo." (Id.)

  C. **History and Characteristics of the Defendant**

Luna is 24 years old and is a citizen of the Dominican Republic, where he was born and raised. He moved to the United States five years ago and is a legal permanent resident. He has lived with his mother in the Bronx for the last two years, and before that was homeless for two to three years. Luna is in monthly contact with his father, who lives in the Dominican Republic. Luna has a three-month old son, who lives with Luna's girlfriend in the Bronx. Luna is currently unemployed. He told the Pretrial Services Office that "he is in excellent physical health with no medical problems." As to mental health, Luna reports that he was diagnosed with schizophrenia and bi-polar disorder four years ago, but is not currently experiencing any active symptoms. (PTS Rpt.; Apr. 2, 2020 Def. Ltr. (Dkt. No. 31) at 1)

As to criminal record, Luna has no prior convictions. He was arrested on December 31, 2018, however, and charged with first degree robbery, second degree menacing with a weapon, and criminal possession of a weapon. (PTS Rpt.) These charges arise from allegations that Luna "robb[ed] a bodega with a machete in Manhattan on December 31, 2018." (Apr. 10, 2020 Govt. Ltr. (Dkt. No. 36) at 3) A bench warrant was issued in that case on January 14, 2019 (PTS Rpt.), and he remained a fugitive on that case until he was arrested in the instant case on January 16, 2020. (Apr. 10, 2020 Govt. Ltr. (Dkt. No. 36) at 3)

Defense counsel has been told by "Luna's state-court attorney . . . that his state robbery charge has been reduced to a misdemeanor petit larceny charge and that the Manhattan District Attorney's office has consented to his release." (Apr. 7, 2020 Def. Ltr. (Dkt. No. 34) at

1) The state court lawyer further reports that "[s]hould Mr. Luna decide to plead guilty, the District Attorney's office has agreed to a non-jail sentence." (Id. at 1 n.1)

### D. Danger to the Community

Luna has admitted distributing a large quantity of crack cocaine. This conduct presents a significant danger to the community.

\* \* \* \*

As to risk of flight, Luna became a fugitive in his state case after having been released on bail. He remained a fugitive for more than a year, and was apprehended only when arrested in the instant case. Moreover, although Luna is a permanent resident, he will become subject to mandatory deportation if he is convicted of the instant drug conspiracy charge. Luna also faces a significant sentence if convicted, including a ten-year mandatory term of imprisonment. The Court concludes that Luna has not rebutted the presumption that no condition or combination of conditions will ensure his return to court if he is released on bail.

As to danger to the community, the Government must establish by "clear and convincing evidence" that there is no condition or combination of conditions that will ensure the safety of the community if the Defendant is released. That standard is met here, and Luna has not rebutted the presumption that detention is appropriate. See 18 U.S.C. § 3142(e)(3)(A).

There is overwhelming and unchallenged evidence that Luna was involved in the large-scale distribution of crack cocaine, including a full confession in a recorded interview. Moreover, the fact that Luna allegedly committed the charged offense while a fugitive on serious state charges demonstrates that he is a danger to the community and not susceptible to community supervision.

Luna contends, however, that the COVID-19 pandemic and conditions at the MCC justify his release. Luna is 24 years old and has no medical conditions that would put him at a higher risk of contracting the coronavirus, or give him a worse prognosis if he contracts COVID-19. Acknowledging the risk that the virus presents in an incarceratory setting, that risk does not – at this time – outweigh the risk of flight and the danger that Luna presents to the community.

As to Luna's arguments about access to counsel, these concerns, while legitimate, do not justify his release. This Court has not set a schedule for motions in this case, nor has any trial date been set, and Luna has not articulated any specific prejudice resulting from his current difficulties in communicating with counsel. Acknowledging that Luna's access to counsel has been temporarily impeded as a result of the unprecedented challenges posed by the COVID-19 pandemic, his impeded access to counsel does not – at this time – outweigh the risk of flight and the danger that Luna presents to the community.

## **CONCLUSION**

The Government has met its burden of demonstrating that there is no condition or combination of conditions that can ensure Luna's return to court and the safety of the community if he is released on bail. Accordingly, Luna will remain detained pending trial or plea. The Court is cognizant of the risk to inmates presented by the current COVID-19 crisis, however. See Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020). Accordingly, Luna's application for pretrial release is denied

without prejudice to renewal in the event circumstances materially change.

Dated: New York, New York
April 13, 2020

SO ORDERED.

*Paul G. Gardephe*

Paul G. Gardephe
United States District Judge